1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLAYTON KIRSH,

                              Plaintiff,

        v.

C.O. McWILLIAMS, et al.,

                              Defendants.

CASE NO. C11-6001 RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

OCTOBER 19, 2012

        The District Court has referred this 42 U.S.C. § 1983 civil rights and Religious Land Use

and Institutionalized Persons Act, (RLUIPA), action to United States Magistrate Judge, J.

Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636 (b) (1) (A) and (B),

and local Magistrate Judge Rules MJR 3 and MJR 4. Defendants filed a motion to dismiss that

the Court converted to a motion for summary judgment (ECF Nos. 17 and 20).

        Plaintiff alleges that he is Muslim. Plaintiff complains that he was denied fast bags (sack

meals designed to be eaten after sundown) during Ramadan. Plaintiff alleges that actions by jail

officials violated his constitutional right to freedom of religion under the First Amendment, and

his rights under RLUIPA. Defendants have submitted evidence showing that plaintiff was not

following the religious practices of the Muslim faith because he was eating his food before

sundown. Further, defendants provide information that plaintiff was strong-arming others for

food items (ECF No. 18, Declaration of Pam Lacipierre, Exhibit 2). Defendants argue that

plaintiff did not exhaust his administrative remedies, that plaintiff cannot proceed with a

RLUIPA action against these named defendants, and that plaintiff fails to state a claim because

the actions taken furthered legitimate penological goals and were, therefore, constitutional (ECF

No. 17).

The Court agrees that a RLUIPA claim cannot be maintained against these defendants

because the Act does not allow for damages and plaintiff does not have the ability to seek

injunctive relief because he is no longer at the jail.  Further, plaintiff's First Amendment claim

fails because the officials' actions furthered legitimate penological goals. Accordingly, the Court

recommends granting the defendant's motion for summary judgment.

FACTS

Plaintiff has not responded to defendant's motion and the Court accepts defendant's facts

as uncontested.  Defendants state that:

> Plaintiff was housed in the Pierce County Detention and Corrections Center
> (PCDCC) on August 13, 2011, during the time of Ramadan. Dkt. 5, Complaint, at 5.
> Plaintiff was initially placed on the Ramadan fast list, but was removed on August
> 15, 2011. Dkt. 5, Complaint, at 17.
> Plaintiff filed two grievances dated August 23, 2011. Dkt. 5, Complaint, at 6,
> 11. The grievance directed to Sgt Schultz and Officer McWilliams complains that the
> incident with McWilliams is "totally a blatant lie," and that she accused him of eating
> during the fast period. Dkt. 5, Complaint, at 6. Sgt. Schultz responded that Kirsh was
> observed multiple times by multiple officers breaking the rules of Ramadan,
> including eating sack lunches early and taking food that was not his to take. *Id.* Kirsh
> appealed the ruling, stating that he was removed without anyone hearing his "part of
> the story." Dkt. 5, Complaint, at 7. Kirsh was released on September 15, 2011, prior
> to resolution of the appeal. Dkt. 5, Complaint, at 6-7.
> In the grievances directed to Sergeant Schultz and Officer Buchanan, Kirsh
> complained that he had been given two sack lunches, and Officer Buchanan

confronted him because he had eaten the sack lunches before sunset. Dkt. 5, Complaint, at 11. Sgt. Schultz responded that Kirsh was twice observed breaking his fast and that the recommendation was to remove him from the Ramadan list. *Id*. Kirsh appealed, challenging whether it was a correct assertion to say he could not break the fast. *Id*. Kirsh was released on September 15, 2011, prior to resolution of the appeal. Dkt. 5, Complaint, at 11-12.

In the body of the Complaint, Kirsh directs this Court to review his Behavioral Report. See Dkt 5, Complaint, at 4-5. An examination of the full behavioral/observation reports indicates that on August 6, 2011, Kirsh was written up for giving away, trading, or selling any food items; for admitting to giving away food; and that he lied about his Ramadan food. Dec. of Pam Lacipierre, Ex. 2 (PCDCC Incident Report No. 3797577). The full inmate behavior report indicates that Kirsh reported that he ate the Ramadan food early <u>and</u> that he gave it away. *Id*. A report from the same day also indicates that Kirsh was found taking another's tray, hiding this fact, returning the tray, and then found again eating from a tray despite the fact that he was on a Ramadan feeding schedule. Id. (PCDCC Incident Report No. 3797297).

Also, on August 13, 2011, Kirsh was cited for lying to staff, trading or selling food items from a breakfast tray, and attempting to manipulate religious services for personal gain. Dec. of Pam Lacipierre, Ex. 2 (PCDCC Observation Report No. 3804715). The full incident report shows that Kirsh was observed with cornbread from a breakfast tray and was attempting to hide it. *Id*. He had crumbs from the cornbread all over his mouth and began to choke on the food as he was confronted by Deputy McWilliams. *Id.*

Also, on September 8, 2011, Kirsh was written up for strong-arming and intimidating other inmates to give him food and commissary items. *Id*. (PCDCC Observation Report No. 3834099). Kirsh was observed going around the "dayroom collecting cake and or rolls from other inmates." *Id.*

Plaintiff was released on September 15, 2011. Dkt. 5, Complaint, at 6, 11; Dec. Pam Lacipierre, p. 2, Ex. 3.

(ECF No. 17 pages 1-3 (emphasis in original)).

<u>STANDARD OF REVIEW</u>

In federal court, summary judgment is required under Fed. R. Civ. P. 56 (a) if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact.  *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  Once the moving party has met its

initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts that show a genuine issue for trial.  *Id*. at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

<u>DISCUSSION</u>

A.      Exhaustion of administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires plaintiff to exhaust whatever administrative remedies are available to him prior to filing a complaint in federal court.  The relevant portion of the Act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997 e (a).

Here, plaintiff filed this action while incarcerated and the Act applies to him.  *See* 42 U.S.C. §1997 e (h).  Plaintiff filed his grievances, but plaintiff was released before the grievance process was completed. He had received initial responses and he had appealed to the next level on two grievances.   There is nothing in the record that indicates to the Court that plaintiff delayed in filing his grievances. A Court is not precluded from considering actions if the administrative remedies are unavailable. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). The Court believes the grievance procedure is unavailable when a prisoner files in a timely manner and prison officials are able to control the timing of responses and prevent exhaustion prior to the inmate's release. Plaintiff filed his grievances in August of 2011 and he was released a little less than one month later, in September of 2011. Here, through no fault of plaintiff, the time line was simply too short for the grievance process to be completed. The Court recommends declining to dismiss the action based on failure to exhaust.

1    B. Religious Land Use and Institutionalized Persons Act.

2    It is now fairly well established that under RLUIPA a plaintiff cannot sue a defendant for

3    damages in  defendant's individual or official capacity. *Washington v. Brown*,  2012 WL

4    3704847 (August 24, 2012). The Eleventh Amendment prevents a RLUIPA claim for damages

5    against defendants in their official capacities. *Sossamon v. Texas*,_ U.S. _ 131 S. Ct. 1651, 1663

6    (2011). Plaintiff is no longer housed at the County Jail.  He cannot seek injunctive relief because

7    he cannot show a live case or controversy. In order to seek any form of injunctive relief plaintiffs

8    must show threat of irreparable injury that is real and immediate, not conjectural or speculative.

9    *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974).

10    Because the plaintiff cannot obtain any form of relief, the Court recommends granting

11    defendant's motion to dismiss plaintiff's RLUIPA claim.

12    C.    First Amendment Claim.

13    When an inmate claims that the action of prison officials violates or curtails the inmate's

14    rights to freedom of religion under the First Amendment, the Court must determine if the

15    governmental action is reasonably related to a legitimate penological purpose. *Turner v. Safley*,

16    482 U.S. 78, 89-91 (1983).The Court must consider four factors: if there is a "valid, rational

17    connection" between the prison regulation and the legitimate governmental interest; whether

18    there are alternative means of exercising the right; the impact accommodation of the asserted

19    constitutional right will have on guards and other inmates, and on the allocation of prison

20    resources generally; the absence of ready alternatives is evidence of the reasonableness of a

21    prison regulation. *Turner v. Safley*, 482 U.S. 78, 89-91 (1983).

22    Here, prison officials observed that plaintiff was breaking the rules of his religion

23    regarding fasting, plaintiff was seen eating his food before sunset and obtaining regular meal

24

trays and also getting sack meals given to inmates who are fasting during daylight hours (ECF No. 18, Exhibit 2). Thus, there was no religious reason to allow him the privilege of obtaining sack meals because he was not fasting. Further, plaintiff was seen trading food items and apparently strong-arming others for food (ECF No. 18, Exhibit 2). With this evidence of misuse of sack lunches and strong-arming for extra food there was a valid reason for removing plaintiff from the list of persons getting sack lunches for Ramadan. Limiting plaintiff to a regular meal tray schedule where his food consumption could be monitored allows for greater control over plaintiff's actions. Enforcing prison rules regarding food use to prevent waste, promote sanitation, and conserve resources, are all proper government goals. Further, preventing strong-arming, preventing prison violence, and maintaining order and discipline in a jail are also valid penological goals.

Alternate means of observing Ramadan do not appear to have been available to plaintiff. The Court finds that the cost to prison security and safety that was posed by plaintiff's conduct is determinative in this case. There was no simple alternative to prevent plaintiff's misuse of the system. Weighing the factors, the Court finds that they heavily favor defendant. Under the test for determining the constitutionality of a prison action that infringes on a First Amendment right, the Court recommends granting defendant's motion for summary judgment. Further, the Court recommends revocation of plaintiff's in forma pauperis status for the purpose of appeal.

Pursuant to 28 U.S.C. § 636 (b) (1) and Fed. R. Civ. P. 72 (b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636 (b) (1) (C). Accommodating the time limit

imposed by Fed. R. Civ. P. 72 (b), the clerk is directed to set the matter for consideration on October 19, 2012, as noted in the caption.

Dated this 26th day of September, 2012.

J. Richard Creatura
United States Magistrate Judge